IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

| | | |
|---|---|---|
| DOUGLAS WAYNE BOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-0131 |
| | ) | Senior Judge Haynes |
| v. | ) | Magistrate Judge Joe Brown |
| | ) | Jury Demand |
| FELICIA McGEE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT FELICIA MCGEE'S MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM**

The Defendant, Felicia McGee ("Nurse McGee"), by counsel, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, now respectfully submits this Memorandum of Law in Support of her Motion to Dismiss for Failure to State a Claim.

**I. STATEMENT OF THE CASE AND FACTS
RELEVANT TO PRESENT MOTION**

**A. Procedural History**

On September 19, 2014, *pro se* Plaintiff Douglas Bowers, an inmate at the Marshall County Jail in Lewisburg, Tennessee, filed a Complaint under 42 U.S.C. § 1983 against Felicia McGee a licensed practical nurse, as well as Billy Lamb, the Marshall County Sheriff. (Docket Entry No. 1). Plaintiff sued both Defendants in their official capacity. (Docket Entry No. 14, p. 4).

On October 6, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis* and dismissed the claims against Defendant Lamb for failure to state a claim for which relief may be granted. (Docket Entry No. 3). The Court further held that a 28 U.S.C. § 1915

1

frivolity hearing should proceed on October 24, 2014, for the purpose of screening the remaining claims. (*Id.*) Following the frivolity hearing, the Court entered an order on March 2, 1014, concluding that Plaintiff stated a potential claim for denial of medical care by Nurse McGee. (Docket Entry No. 12).

On June 1, 2015, the Court instructed the Clerk to send a service packet to Plaintiff. (Docket Entry No. 19). Plaintiff completed the packet, summons was issued, and Nurse McGee was subsequently served on or about June 17, 2015. (Docket Entry Nos. 24 and 25). On June 24, 2015, counsel for Nurse McGee entered an appearance. (Docket Entry No. 26). On July 7, 2015, the Magistrate Judge granted Nurse McGee an extension to respond to the Complaint. (Docket Entry No. 30).

Defendant now respectfully submits this motion under Federal Rule of Civil Procedure Rule 12(b)(6). Should the Court deny this motion, Defendant requests additional time to file an Answer.

**B. Allegations** [1]

1. *Introduction*

Plaintiff was first imprisoned at the Marshall County Jail on or about August 30, 2014. (*See* Docket Entry No. 1, p. 5). He was sentenced to 90 days and expected to be released on or about November 27, 2014. (*Id.* at 7). After being confined for less than three weeks, or on September 17, 2014, Plaintiff prepared the Complaint. (*Id.* at 6). Plaintiff then filed the Complaint on September 19, 2014. (*Id.* at 1). Plaintiff sued Nurse McGee in her official capacity as a nurse at the Marshall County Jail. (*Id.* at 4). While practicing at the Marshall County Jail, Nurse McGee was employed by Southern Health Partners, Inc. Plaintiff was released as

---

[1] By submitting this motion to dismiss, Nurse McGee does not admit the truth of any of the allegations in the Complaint.

anticipated in late 2014 (*See* Docket Entry No. 11).

    2. *Pervasive Pronoun Use Within The Statement of Facts*

As an initial matter, it is important to note that in relating the "facts" and allegations underlying his claim, Plaintiff only identifies Nurse McGee by name on one occasion. (*Id*. at 5-9). All remaining allegations within the four-page "Statement of Facts" are couched in terms of "she," "they," "them," or "the nurse." (*Id*.)

    3. *Plaintiff's Pre-Confinement Diagnoses*

Plaintiff alleges he presented to the Marshall County Jail with two pre-existing medical conditions: (1) a 70 percent blocked artery; and (2) Hepatitis C. (*Id*. at 5-6). Plaintiff's only allegations associated with Hepatitis C are: "I have Hepitidus C [sic]. They no this[.] [T]hey won't do nothing." (*Id*. at 6). Within the four corners of the Complaint, Plaintiff does not specifically cite to any other medical diagnosis. (*Id*. at 5-6). He broadly states that he "want[s] to sue for … medical [attention]." (*Id*. at 9).

    3. *Healthy Diet*

Plaintiff claims he advised "the nurse" he was "surpose" to be on a "healthy diet," but "[s]he never put me on that healthy diet." (Docket Entry No. 1, p. 5). In the Complaint, Plaintiff makes no attempt to elaborate on this allegation. (*Id*.). He does not correlate a "healthy diet" with any medical condition much less a serious medical need. (*Id*.).

    4. *Medications*

Plaintiff sporadically references three medications—(1) amlodipine; (2) aspirin; and (3) "nitro." (*Id*. at 5-6). Plaintiff alleges that prior to confinement he was taking amlodipine and aspirin daily. (*Id*. at 5). Plaintiff further asserts that his outside physician had prescribed "nitro pills," for use, as needed, to alleviate chest pain. (*Id*. at 6).

Plaintiff apparently brought open bottles of some or all of his medications to the jail. (*Id* at 5.) He states that the amlodipine and aspirin were prescribed for a blocked "artirie" by his physician. (*Id*.) Plaintiff does not cite any other medical diagnoses related to these medications. (*See* Docket Entry No. 1, generally).

Plaintiff asserts that at the jail, "she" told Plaintiff that personal medications were off-limits if the bottles were open. (*Id*. at 5). However, "she" administered five doses of amlodipine from an open container. (*Id*.) Plaintiff does not state anywhere in the Complaint that Nurse McGee, or any health care provider at the jail for that matter, denied amlodipine or aspirin. (*Id*. at 5-8). Instead, he complains that another unnamed medication was prescribed in lieu of amlodipine. (*Id*. at 5). As a result, he experienced a headache. (*Id*. at 5-6) Plaintiff does not further describe the headache. (*Id*. at 5-8).

Plaintiff alleges his outside physician prescribed "nitro pills" to alleviate chest pain, as needed. (*Id*. at 6). He states he brought these pills to the jail. (*Id*.) Plaintiff asserts that when he complained of chest pain to "them," "all they said is ok." (*Id*.).

5. *Therapeutic Devices*

In addition to medications, Plaintiff alleges several therapeutic devices had also been a part of his pre-confinement regimen for the blockage in his artery—(1) an inhaler; (2) nasal spray; and (3) a humidifier. (*Id*. at 5-8). Plaintiff asserts that his physician had prescribed an inhaler for use as needed, or three to four times per day (*Id*. at 5-6) and a nasal spray for use with unknown frequency. (*Id*. at 5-8). He alleges that for the time frame spanning August 30, 2014 to September 17, 2014, he had not "had my inhaler yet." (*Id*. at 6). He then states "It's hard to breath[e]. Chest hurt a lot . . . Everything I say is true. They refused my nasal spray, They refused my inhaler that I surpose to use three or four times a day as needed."(*Id*. at 6). Plaintiff

4

alleges his outside physician had prescribed these for "70 percent blockage." (*Id*. at 6-7).

Plaintiff appears to claim that on September 17, 2014, Officer Justin Christmas removed his "humidifier machine" from his cell. (*Id*. at 8). The officer asked him, however, whether he needed any parts for it. (*Id*.). Plaintiff alleges the purpose for the humidifier is: "for my doctor to see what's going on with me. It has a chip in it." (*Id*.) Additionally, Plaintiff states that without the humidifier, he has a 70 percent chance of choking to death while on his back and a 20 percent chance of choking on his side. (*Id*.)

Finally, Plaintiff globally states that "she is doing anything to hurt me." (*Id*. at 8).

6. *Requested Relief*

Plaintiff alleges that he has suffered "stress" and "mental curity [sic]." (*Id*. at 7). Plaintiff "hoped" he did not suffer any injury by the time he was released. (*Id*. at 7).

## II. STANDARD FOR RULING ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

On appeal, a district court's grant of a Rule 12(b)(6) motion to dismiss is reviewed de novo. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007) (citing *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 405 (6th Cir. 2006)). The standard of review is abuse of discretion. *Re/Max Intern., Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th 1999).

The Court reviews motions to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure by accepting that all of the allegations contained in the complaint are true, resolving all doubts in the plaintiff's favor, and construing the complaint liberally in favor of a *pro se* plaintiff. *Duckett v. State*,[2] No. 3:10-0067, 2010 WL 3732192, at *2 (M.D. Tenn. Sept. 20, 2010) (citing *Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Meyer*, 169 F.3d 384,

---

[2] *See* Exhibit A attached hereto – case not reported in F.Supp.2d (2010).

387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987)). "Although the Court holds *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers, the district court is under no duty to conjure up unpled allegations." *Kotewa v. Westbrooks,*[3] No. 1:12-CV-264, 2013 WL 1249227, at *2 (E.D. Tenn. Mar. 27, 2013) (citing *GJR Inv., Inc. v. County. of Escambia*, 132 F.3d 1359, 1369 (11th Cir.1998)).

Although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)0; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations averred must be enough to show a plausible right to relief. *Twombly*, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to withstand a motion to dismiss. *Id*.; *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F. 2d 434, 436-37 (6th Cir. 1988). Further, the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. *Id*. Although Rule 8 of the Federal Rules of Civil Procedure does not constitute a "hyper-technical, code-pleading regime," "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. A Complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 678 (citing *Twombly*, 550 U.S. at 557). "[D]ismissal [is] proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Downie v. City of Middleburg Heights*, 301 F.3d 688, 693 (6th Cir. 2002).

---

[3] *See* Exhibit B attached hereto – case not reported in F.Supp.2d (2013).

### III. ISSUES

1. Whether the Complaint fails to state an official capacity claim against Nurse McGee under § 1983 because it fails to state a set of allegations sufficient to support an unlawful policy or custom or a causal link between such policy or custom and a violation of Plaintiff's constitutional rights.

2. Alternatively, whether the Complaint fails to state an individual capacity claim against Nurse McGee because Plaintiff's allegations are insufficient to support a § 1983 Eight Amendment claim for deliberate indifference to a serious medical need.

3. Whether the Complaint should be dismissed because Plaintiff's claims against Nurse McGee sound in malpractice and Plaintiff failed to comply with the procedural requirements of the HCLA.

4. Whether the Complaint fails to state a claim against Nurse McGee because it fails to state any allegations sufficient to support a physical injury under the Prison Litigation Reform Act, 42 U.S.C. 1997e (e) ("PLRA").

### IV. LAW AND ARGUMENT

**A. Official Capacity v. Individual Capacity Claims**

To state a claim under § 1983 claim, a plaintiff must allege: (1) he was deprived of a right secured by the Constitution and laws of the United States; and (2) the alleged deprivation was committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The second part of the foregoing test, commonly referred to as "state action," may be brought in either an individual or official capacity. *See e.g. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Stemler v. City of Florence*, 126 F.3d 856, 864 n.8 (6th Cir. 1997).

7

A successful suit against a person acting under color of law or in an "individual capacity" results in personal liability for damages by the individual to the injured party. *Leach*, 891 F.2d at 1245. On the other hand, a suit against an individual in an "official capacity" is tantamount to a suit directly against a local government and may under certain limited circumstances, result in that entity's liability to the injured party for damages. *See id*; *Matthews*, 35 F.3d at 1049; *Stemler,* 126 F.3d at 864 n.8.

"As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Leach,* 891 F.2d at 1245 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Regardless of whether a suit is pled as an "official capacity" suit against an individual or a direct claim against the local government, the Supreme Court has held that the plaintiff must, in both instances, show his or her injuries were the result of some "policy or custom" attributable to the governmental entity. *Id*. at 1245-46. (citing *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 690 (1978)).

Specifically, the Supreme Court stated in *Kentucky v. Graham*;

> On the merits, to establish personal liability in a § action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right….More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation, … thus, in an official-capacity suit the entity's "policy" or custom" must have played a part in the violation of federal law.

*Id*. (quoting *Graham*, 473 U.S. 159, 165-66 (1985)) (citations omitted). Significantly, these restrictions apply equally to county governments, *see e.g. Carroll v. Knox Cnty. Bd. Of Educ.,*[4] No. 3:07-CV-345, 2010 WL 2507046, at *5-6 (E.D. Tenn. June 17, 2010), as well as private entities such as SHP, *see e.g. Street v. Corrections Corp. of Am.*, 102 F.3d 810,

---
[4] *See* Exhibit C attached hereto – case not reported in F. Supp.2d (2010).

817-18 (6th Cir. 1996).

In the case at hand, the Court dismissed Plaintiff's § 1983 claims against Co-Defendant Lamb after performing an initial frivolity screen under 28 U.S.C. §1915(e)(2). (*See* Docket Entry No. 3). The Court also determined Plaintiff could proceed against Nurse McGee for denial of medical care in violation of the Eighth Amendment. (*See* Docket Entry Nos. 12 and 19).

By the plain language of the Complaint, Plaintiff *explicitly* sues Nurse McGee in her "official capacity" as a nurse at the Marshall County Jail. (*See* Docket Entry No. 1, p.4). As explained more fully below, this is equivalent to bringing suit against Nurse McGee's employer, SHP. However, out of an abundance of caution, Nurse McGee will address Plaintiff's failure to state a claim in both an official and an individual capacity.

> **B. Whether the Complaint fails to state an official capacity claim against Nurse McGee under § 1983 because it fails to state a set of allegations sufficient to support a claim for an unlawful policy or custom or a causal link between such policy or custom and a violation of Plaintiff's constitutional rights.**

Plaintiff sues Nurse McGee in her "official capacity." (*Id*.). As such, under the principles articulated in *Monell*, Plaintiff must show that any alleged denial of medical care was the result of a policy or custom of Nurse McGee's employer, SHP. *Monell*, 436 U.S. at 690. Moreover, an employer cannot be held responsible under § 1983 for an alleged constitutional violation, unless there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246-47 (6th Cir. 1989). Simply stated, the plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.

9

1987), *overruled on other grounds* by *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).

In the instant case, Plaintiff fails to expressly identify any potential policy or custom created and implemented by SHP at the Marshall County Jail which might have contributed to any alleged injury. (*See* Docket Entry No. 1, pp.1-9). Plaintiff's allegations also do not imply the existence of any such policy or custom much less that any policy or custom acted as the "moving force" behind any constitutional violation. (*Id.*); *see also Graham*, 473 U.S. at 165-66.

Accordingly, the "official capacity" claims against Nurse McGee, however construed, must be dismissed.

### C. Alternatively, whether the Complaint fails to state a individual capacity claim because Plaintiff's allegations are insufficient to support a § 1983 claim for deliberate indifference to a serious medical need under the Eighth Amendment.

The Eighth Amendment prohibits prisoners from being subjected to "unnecessary and wanton infliction of pain," which includes the "deliberate indifference to serious medical needs". To demonstrate a violation of the Eighth Amendment in this context, Plaintiffs must meet a two-pronged test. *See Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The first prong, which is a subjective test, requires plaintiffs to demonstrate that the government actor "had a sufficiently culpable state of mind—one of deliberate indifference to health or safety." *Id.* The second prong, which is an objective test, requires plaintiffs to show that the medical need at issue was sufficiently serious. The courts define a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.2008).

1. *Plaintiff Has Not Alleged Facts Sufficient To Support a Claim for Deliberate Indifference for the "70 percent" Blocked Artery*

The subjective component requires that to establish deliberate indifference, the defendant

10

have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994). In other words, Plaintiffs must allege facts which, if true would show that a defendant, like Nurse McGee, perceived facts from which to infer substantial risk to Plaintiff, that Nurse McGee did in fact draw that inference, and that Nurse McGee then disregarded that risk. *See id.; see also Johnson*, 398 F.3d at 874; *Dominguez v. Corrections Med. Servs.*, 555 F.3d 543, 550 (6th Cir.2009); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Dominguez*, 555 F.3d at 550 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The bulk of Plaintiff's claim hinges on an alleged diagnosis of a 70 percent blocked artery by his outside physician. In this regard, Plaintiff has failed to allege sufficient facts to support a claim that Nurse McGee acted with deliberate indifference.

First, Plaintiff only mentions Nurse McGee's name on one occasion in his five pages of allegations. (*See* Docket Entry No. 1, pp. 5-9). Second, Plaintiff's Complaint is laden with ambiguity. (*See* id.). Conclusory statements do not suffice to state a claim and this Court is not required to take such allegations as true. *See Iqbal*, 129 S.Ct. at 1949-53.

For example, Plaintiff asserts his outside physician prescribed "nitro pills" for chest pain, as needed. (Docket Entry No. 1, p. 6). He states that he brought these pills to the jail. (*Id.*) He then asserts that when he complained of chest pain to "them," all they said is ok." (*Id.*) Plaintiff also alleges that from August 30, 2014 to September 16, 2014, he had not "had my inhaler yet." Plaintiff then states "It's hard to breath[e]. Chest hurt a lot . . . Everything I say is true. (*Id.*) They refused my inhaler that I surpose [sic] to use three or four times a day as needed." (*Id.*) He globally states that "she is doing anything to hurt me."

11

Based on the foregoing, the Complaint completely lacks well-pled factual allegations to support deliberate indifference by Nurse McGee. None of the allegations mention Nurse McGee. There is nothing to suggest that she perceived facts from which to infer a substantial risk to Plaintiff, that she actually did in fact draw that inference, and that Nurse McGee then disregarded that risk. Without allegations sufficient to state a claim for deliberate indifference, Plaintiffs cannot show there was a specific constitutional violation.

Further, Plaintiff complains that Nurse McGee allegedly prescribed another medication in lieu of amlodipine and that as a result, he experienced a headache. While Plaintiff may prefer to receive a particular medication, the Eighth Amendment does not entitle an inmate to demand specific care. See *Fisc. v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1971); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)

Therefore, because Plaintiff did not allege sufficient facts to meet the first prong of the deliberate indifference test, Nurse McGee is entitled to dismissal.

2. *Plaintiff Has Not Alleged Facts Sufficient To Support A Claim for Deliberate Indifference To A Serious Medical Need Related to a Healthy Diet.*

The objective component of an Eighth Amendment claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir.1994). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (internal quotation marks and citations omitted).

Plaintiff alleges that he told "the nurse" he was supposed to be on a "healthy diet" and that "she never put [him] on that healthy diet." The Complaint contains no other allegations

12

Case 1:14-cv-00131   Document 36   Filed 07/27/15   Page 12 of 19 PageID #: 120

regarding diet. The failure to order a special diet where a prisoner's medical condition requires one may rise to the level *may* rise to the level of an Eighth Amendment violation. *See Byrd v. Wilson*, 701 F.2d 592, 594–95 (6th Cir.1983).

However, Plaintiff provides no explanation in the Complaint as to how the "healthy diet" he requires is special, how it may differ from a regular diet, and fails to link this diet to any medical condition much less a serious medical need. Plaintiff does not allege that Nurse McGee perceived facts from which to infer a substantial risk to Plaintiff that she actually did in fact draw that inference, and that Nurse McGee then disregarded that risk. Plaintiff has made nothing more than bare bones, conclusory assertions regarding his diet. These assertions merit dismissal as they fail to state a cognizable constitutional claim.

3. *Plaintiff Has Failed To Allege Facts Sufficient To Support a Claim for Deliberate Indifference To A Serious Medical Need for Hepatitis C.*

Plaintiff's sole allegations regarding Hepatitis C are limited to: "I have Hepitidus C. They no (sic) this. They won't do nothing."

Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir.2007) (citation omitted). Once again, Plaintiff has failed to meet his burden and dismissal is warranted for failure to state a claim.

**D. Nurse McGee Would Show Dismissal of the Complaint Is Warranted Because All Of Plaintiff's Allegations Sound in Negligence, Not A claim Under § 1983.**

As discussed above, in order to establish a claim for relief under § 1983, the plaintiff must plead and prove that the defendants, while acting under color of state law, deprived him of some right or privilege secured by the Constitution or laws of the United States. *Parratt v.*

13

*Taylor*, 101 S.Ct. 1908, 1913, (1981). The Eighth Amendment guarantees a prisoner the right to medical care. This right has been violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 97 S.Ct. 285, (1976). Negligence, even gross negligence, will not support a § 1983 claim for denial of medical care. *See Farmer v. Brennan*, 114 S.Ct. 1970, (1994); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir.1992).

In this case, the plaintiff cites two medical conditions diagnosed pre-confinement—(1) Hepatitis C; and (2) a 70 percent blocked artery. As addressed above, Plaintiff's allegations as to the former are patently insufficient and fail to state a claim for relief. As to the latter, Plaintiff asserts that pre-confinement, his outside physician prescribed amlodipine, aspirin, nitro, an inhaler, nasal spray, and a humidifier. Plaintiff alleges within the Complaint that Nurse McGee administered another medication in lieu of amlodipine for the blocked artery. He alleges that the nitro, inhaler, and nasal spray were not given. He claims that, as a result, he suffered chest pain, a headache and shortness of breath, on an unknown date, all with unknown duration, frequency, and severity. Plaintiff makes no mention in the Complaint of ever seeking medical attention at the Jail for any issue, nevertheless a blocked artery, chest pain, headache or shortness of breath. He merely states "they wont do nothing" but it is not clear who "they" are. The plaintiff received treatment for the blocked artery—just not the scope or type of treatment that he wanted, or for that matter, sought.

When a prisoner has received some medical attention and his claim is a challenge to the adequacy of the care provided, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law. *Hill v. Jones,* 211 F.3d 1269 (6th Cir.2000). Medical malpractice does not become a constitutional tort merely because the victim is a prisoner. *Estelle*, 429 U.S. at 105–106. Negligent conduct, is not actionable under

§ 1983 because it does not rise to the level of a constitutional deprivation. *Estelle v. Gamble*, 97S.Ct. 285 (1976). Therefore, the plaintiff has failed to describe conduct resulting in a violation of federal law or the Constitution. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001).

The motion to dismiss is well-taken and should be dismissed.

1. *Plaintiff's claims should be dismissed because Plaintiff failed to comply with the procedural requirements of the Health Care Liability Act, § 29-26-101, et. seq.*

As discussed above, Plaintiffs claims sound in malpractice. The Tennessee statute governing malpractice is the Health Care Liability Act, codified at 29-26-101, *et. seq*. This statute has certain procedural requirements which must be met for a lawsuit to proceed. First, Plaintiff must provide written notice of a potential claim to a defendant at least sixty (60) days prior to filing a complaint. *See* Tenn. Code Ann. § 29-26-121(a). Second, the plaintiff must file a certificate of good faith with the complaint. Tenn. Code Ann. § 29-26-122(a). Plaintiff has failed to meet both requirements. We will address each in turn.

2. *Plaintiff's Complaint fails to state a claim because under Tenn. Code Ann. § 29-26-121(a) Plaintiff was required to provide written notice of the potential claim to Defendant at least sixty (60) days prior to filing the complaint.*

Under Tenn. Code Ann. § 29-26-121(a)(1), a plaintiff is required to provide written notice advising of the potential claim for health care liability at least 60 days before filing the complaint. Tennessee Code Annotated § 29-26-121(a)(1) provides in pertinent part:

> Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant *at least sixty (60) days before the filing of a complaint* based upon health care liability in any court of this state.

(emphasis added).

In the case before this Court, the Complaint does not state that Plaintiff provided pre-suit notice to any of the Defendants as required under Tenn. Code Ann. § 29-26-121(a)(1). Plaintiff

15

did not comply with the mandatory 60-day written notice required by Tenn. Code Ann. § 29-26-121(a)(1). Absent extraordinary cause, Plaintiff's failure cannot be excused. Tenn. Code Ann. § 29-26-121(b). Under these circumstances, the statute mandates dismissal.

As such, the motion to dismiss is well taken and should be granted.

3. *Plaintiffs Complaint fails to state a claim upon which relief may be granted because under Tenn. Code Ann. § 29-26-122(a), Plaintiff was required to file a Certificate of Good Faith with the Complaint stating that Plaintiff conferred with a medical expert and that there is a good faith basis to maintain the action.*

Tenn. Code Ann. § 29-26-122(a) requires that the certificate of good faith be filed with the Complaint. Specifically, Tennessee Code Annotated § 29-26-122(a)(1) provides in pertinent part:

> In any medical malpractice action in which expert testimony is required ..., the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29–26–121 or demonstrated extraordinary cause.

In the certificate, the plaintiff must state that he or she has consulted with a medical expert who has provided a written statement confirming that there is a good-faith basis for the plaintiff's action. Tenn. Code Ann. § 29–26–122(a)(1)-(2). Significantly, the failure of a plaintiff to file a certificate of good faith in compliance with this section makes the action subject to dismissal with prejudice. See Tenn. Code Ann. § 29–26–122(c).

Here, Plaintiff indisputably failed to file a certificate of good faith with his Complaint. Commensurately, Plaintiff's claims should be dismissed with prejudice.

### E. Whether the Complaint fails to state a claim against Nurse McGee because Plaintiff admits he has not suffered a physical injury under the PLRA.

For actions, such as the present suit, premised on violation of the Eighth Amendment, the PLRA provides an inmate may not recover damages for a mental or emotional injury absent a

16

Case 1:14-cv-00131   Document 36   Filed 07/27/15   Page 16 of 19 PageID #: 124

physical injury.[5] *See* 42 U.S.C. § 1997e(e); *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015). Plaintiff alleges in the Complaint that he suffered "stress" and "mental curity [sic]." (Docket Entry No. 1, p.7). He "hoped" that he would not suffer any physical injury during his confinement. (*Id*.). Plaintiff requested injunctive relief in the form of "new trays and cups" and "detirminated[sic] from job." He further sought $650.

In the wake of filing the Complaint, Plaintiff was released from the Marshall County Jail. (*See* Docket Entry No.). Because Plaintiff is no longer in custody, injunctive relief is no longer available. *Moore v. Curtis*,[6] 68 Fed. App'x. 561, 562, (6th Cir. 2003); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). A case generally becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982). Therefore, Plaintiff's claim for injunctive relief is moot. Plaintiff's sole remaining claim is for monetary damages for mental or emotional distress. Plaintiff admits in the Complaint that he has not suffered a physical injury; his allegations are merely grounded in speculation that physical injury might occur at some unidentified point in the future.

Without sufficient allegations to support a physical injury, the motion to dismiss, under the authority of the PLRA, is well taken and should be granted.

---

[5] The PLRA specifically states: "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

[6] *See* Exhibit D attached hereto – this case was not selected for publication.

17

## V. CONCLUSION

For the foregoing reasons, the Defendant, Felicia McGee respectfully requests that the Court enter an order to dismiss Plaintiff's claims for failure to state a claim. This Defendant further requests all further relief which may be appropriate on these premises.

Respectfully submitted,

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC**

By: s/Carol Davis Crow
**Reid D. Leitner, Esq.** / BPRN 16187
**Carol Davis Crow, Esq.** / BPRN 25184
414 Union Street, Suite 1900
Nashville, Tennessee  37219-1782
(615) 255-7722 Phone
(615) 780-2210 Fax
reid.leitner@leitnerfirm.com
carol.crow@leitnerfirm.com

Attorneys for Defendant Felicia McGee

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic means via the Court's electronic filing system or by U.S. Mail, postage prepaid, to:

Douglas Wayne Bowers
5443 Hickory Park Drive
Antioch, Tennessee 37013

This the 27th day of July, 2015.

By: s/Carol Davis Crow
**Carol Davis Crow**